UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| BENJAMIN ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00483-JPH-MJD |
| | ) | |
| J. PELTIER, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**Order Granting Defendants' Motion for Summary Judgment,
Denying Plaintiff's Motion for Summary Judgment and Directing Entry of Final Judgment**

Benjamin Adams alleges that the defendants violated his civil rights when he was an inmate with the Indiana Department of Correction. Specifically, Mr. Adams contends that in connection with prison disciplinary proceedings, the defendants discriminated against him based on his race in violation of the Equal Protection Clause of the Fourteenth Amendment, retaliated against him in violation of the First Amendment because he filed an ombudsman complaint, and violated his Fourteenth Amendment due process rights. The defendants include C. Feldkamp, who investigated Mr. Adams for suspected misconduct, J. Peltier, who served as hearing officer in the first disciplinary hearing, C. Penfold, who denied Mr. Adams' appeal, H. Andrews, who served as hearing officer in a second disciplinary hearing, and Robert Carter, Commissioner of the Indiana Department of Correction.  Mr. Adams also claims that as a result of the disciplinary proceeding he was subjected to unconstitutional conditions of confinement while he was in segregation. Mr. Adams seeks partial summary judgment on his claims and the defendants seek summary judgment. For the following reasons, Mr. Adams's motion for summary judgment is denied and the defendants' motion for summary judgment is granted.

1

## I. Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir.

2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 572-73 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

## II. Facts

The following statement of facts has been evaluated pursuant to the standard set forth above. The facts are considered undisputed except as otherwise noted.

### A. Mr. Adams's Ombudsman Complaint

Mr. Adams was approved to work in the kitchen at Plainfield Correctional Facility ("PCF") on January 18, 2017. Dkt. 189 ¶ 9. That same day, defendant Feldkamp and Paul Prulihere instructed Mr. Adams's Unit Team Manager to remove Mr. Adams from this job assignment. *Id.* ¶ 10. Mr. Adams then filed an internal ombudsman complaint against them for having him removed from his job. *Id.* ¶ 11. On January 26, 2017, Internal Investigations ordered classification to remove Mr. Adams from his kitchen job, stating "May Never Ever Return to Kitchen Per: Prulheire (Unless you want him to smuggle in HUGE amounts of drugs). Reclass him to another job." *Id.* ¶ 13. On January 31, 2017, Classification Director Ty Robbins approved Mr. Adams's removal from his kitchen job assignment. *Id.* ¶ 18.

### B. The Assault and the Internal Investigation

Defendant Feldkamp has been the Director of Intelligence and Investigations ("I&I") at PCF for approximately 20 years. Dkt. 202-3, p. 1, ¶ 2. In that role, Mr. Feldkamp is responsible for conducting internal investigations at PCF. *Id.* ¶ 3. Mr. Feldkamp investigated an incident that

occurred on February 5, 2017, when an offender at PCF was assaulted by other offenders.[1] Upon concluding the investigation, Mr. Feldkamp issued a report (the "I&I Report") of his findings, dkt. 202-3, p. 1 ¶¶ 3-4; dkt. 202-3, p. 6-17, including that Mr. Adams had ordered the attack.

The injured offender initially stated that he fell. Dkt. 189, ¶ 22. After Mr. Feldkamp interviewed witnesses, including Mr. Adams, offender Raymond Barnett, and others, *id.* ¶ 5, he concluded that the injuries were from an assault that was coordinated by Security Threat Groups ("STGs"), more commonly known as "gangs." *Id.*, p. 2 ¶ 6. He further concluded that Officer Nelson, the officer on duty at the time of the attack, performed deficiently. *Id.* Specifically, Officer Nelson failed to maintain appropriate boundaries and control in violation of the prohibition against romantic or sexual relationships between officers and offenders. *Id.*, p. 2 ¶ 7. *Id.* Officers are required to report any romantic or sexual overtures from offenders. *Id.*, p. 2 ¶ 8.

Mr. Feldkamp's investigation revealed that an offender[2] possessed a love note directed to Officer Nelson, that Officer Nelson had engaged in inappropriate social interactions with that offender, and that she was aware of the offender's romantic interest in her but had failed to report it despite being obligated to do so. *Id.*, p. 2 ¶¶ 9-10. Officer Nelson is a white woman, and the offender involved is an African-American man. *Id.*, p. 2, ¶ 11. Separately, Mr. Feldkamp found that Officer Nelson failed to maintain proper control over Mr. Adams, permitting him to remain outside his cell during count and to assign work details to other offenders. *Id.*, p. 3, ¶ 12-14; dkt. 202-3, p. 11. Mr. Adams is also an African-American man. *Id*., p. 3 ¶ 15. As a result of the investigation, Officer Nelson left IDOC employment. *Id.*, p. 3 ¶ 17.

---

[1] Mr. Adams asserts that the offenders got into a fight.
[2] The parties' materials do not identify this offender by name.

Mr. Feldkamp interviewed Mr. Barnett, who is also an African-American man. Mr. Feldkamp asked Mr. Barnett if Officer Nelson had been "flirty" with him, and stated "please don't take this the wrong way, but she [Officer Nelson] clearly favors Black gentlemen, and there was some speculation that she might even have a boyfriend." *Id.*, p. 3 ¶ 17. Mr. Feldkamp testified that he asked this question because Officer Nelson had exhibited inappropriate boundaries with one African-American offender and had failed to report his romantic interest in her, and had failed to exercise appropriate control over Mr. Adams. *Id.*, p. 3 ¶ 18. Mr. Feldkamp testified that he did so in order to investigate the extent of Officer Nelson's misconduct, and not because he has any objection to white women dating African-American men. *Id.*, p. 4 ¶ 19.

Mr. Feldkamp concluded that Mr. Adams was a member of an STG known as the Vice Lords and that the offender who carried out the attack was a member of an STG known as the Almighty Gaylords ("AGL"). *Id.*, p. 4 ¶ 20. *Id*. Although AGL's members are primarily white and the Vice Lords's members are primarily African-American, Mr. Feldkamp understood from his experience that they often coordinate their activities. *Id.*

Mr. Feldkamp concluded that the offender who had been attacked had been paying protection money to Mr. Adams and/or the Vice Lords, and that Mr. Adams had ordered the AGL member to attack that offender when the protection payments stopped. *Id.*, p. 4 ¶ 21, p. 7-8. Mr. Feldkamp stated that his conclusions reflect his sincere belief, formed after a thorough and professional investigation. *Id.*, p. ¶ 22. Mr. Feldkamp testifies that they were not motivated by any racial or retaliatory animus, and Mr. Feldkamp harbors none. *Id.*, p. 4-5 ¶¶ 23-24.

### C. The Conspiracy Charge, Sanctions, and Reclassification Proceedings

Based on the investigation, Mr. Adams was charged with Conspiracy to Assault under case number IYC 17-03-0078 (the "Conspiracy Charge"). Dkt. 122, ¶ 35. The Conspiracy Charge was

5

first heard by Disciplinary Hearing Officer ("DHO") Peltier in a disciplinary hearing on March 16, 2017. *See Adams v. Superintendent*, 2:17-cv-00546-JMS-MJD, dkt. 10-1 (S.D. Ind. Aug. 27, 2018) ("*Adams I*").[3] DHO Peltier did not allow live witnesses to testify and credited Mr. Feldkamp's statement over Mr. Adams's statements. Dkt. 189, ¶ 45. Mr. Adams was found guilty and sanctioned with one year of disciplinary segregation, among other things. *Adams I*. Officer Penfold denied Mr. Adams's appeal. Dkt. 189, ¶ 51.

On October 11, 2017, Mr. Adams was granted a rehearing of his conviction on the Conspiracy Charge. *See Adams I*. At the rehearing, DHO Andrews denied Mr. Adams's request for live witnesses and physical evidence. Dkt. 189 ¶ 58. After the rehearing, Mr. Adams was again found guilty of Conspiracy to Assault and sentenced to a year in disciplinary segregation. *See Adams I*, dkt. 10-2. Warden Richard Brown denied Mr. Adams's appeal. Dkt. 189, ¶ 59. Mr. Adams challenged this proceeding in this Court in a petition for a writ of habeas corpus. *See Adams I*. His petition was granted, and the disciplinary sanctions were vacated. *Id.* dkt. 20, 21.

Shortly after Mr. Adams's initial conviction on the Conspiracy Charge, on March 22, 2017, Mr. Adams was reclassified from PCF to Department-Wide Restrictive Housing. Dkt. 202-1, p. 5. He was reclassified because, in a period of less than one year, he had committed eight different conduct violations. *Id*. The defendants assert that Mr. Adams was not placed in disciplinary segregation due to any single incident. Dkt. 202-1, p. 1 ¶ 6.

Offenders on segregation are kept on 23-hour lockdown. Dkt. 189, ¶ 53. They are not allowed commissary and have limited access to hygiene items. *Id*. The food portions are smaller than those in general population, and there are no religious services, limited phone calls, and limited human contact. *Id*.

---

[3] The Court takes judicial notice of the files in Case No. 2:17-cv-546-JMS-MJD.

6

### III. Discussion

#### A. *Heck* Bar

As an initial matter, the defendants argue that Mr. Adams's claims are barred by the doctrine recognized in *Heck v. Humphrey*, 512 U.S. 477, 487 (1994) that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* If it would, "the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated" through channels such as direct appeal or a writ of habeas corpus. *Id. Heck* applies to challenges to prison disciplinary convictions that resulted in the deprivation of good time credit and therefore impact the duration of a prisoner's sentence, like Mr. Adams's conviction on the Conspiracy Charge. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997).

Because Mr. Adams's conviction on the Conspiracy Charge was ultimately vacated, however, it has already been invalidated so *Heck* does not bar a challenge to any other adverse consequence Mr. Adams suffered because of it. Defendants contend that the only harm Mr. Adams alleges in this case – his time in segregation – was not the result of the Conspiracy Charge, but was the result of a reclassification decision that was based a number of disciplinary violations. Defendants further contend that this lawsuit is barred by *Heck* because Mr. Adams's success in this case would necessarily imply the invalidity of the reclassification decision. But the stated purpose of *Heck* is to prevent a civil rights proceeding from interfering with the validity of a criminal or disciplinary conviction that impacts a prisoner's sentence. 512 U.S. at 487. The defendants provide no reason that *Heck* should apply to the reclassification decision here, and the Court can discern none.

The defendants also assert that Mr. Adams's reclassification was affirmed by this Court in *Adams v. Warden*, 2:18-cv-294-JMS-MJD (S.D. Ind.). But that case involved Mr. Adams's habeas corpus challenge to a trafficking charge against him. *Id.*, dkt. 17. The Court did not address Mr. Adams's reclassification to disciplinary segregation. Further, since a habeas petition requires a challenge to the fact or duration of one's confinement, Mr. Adams could not have challenged the reclassification in a habeas case. *Washington v. Smith*, 564 F.3d 1350, 1350 (7th Cir. 2009) ("a habeas corpus petition must attack the fact or duration of one's sentence; if it does not, it does not state a proper basis for relief").

Finally, the defendants suggest that because Mr. Adams was reclassified to segregation based on multiple conduct reports, he cannot show that the time he spent in segregation challenged in this case was the result of any misconduct in the course of pursuing the Conspiracy Charge. But the Conspiracy Charge was one of the conduct reports used to support his reclassification. *See* dkt. 202-1, p. 5 (referencing a March 16, 2017 conviction for "A100 Violation of Any Law"). There is at least a dispute of fact regarding whether, without that charge, he would have been reclassified.

Because *Heck* does not bar Mr. Adams's challenge, the Court will proceed to address the merits of Mr. Adams's claims.

### B. Discrimination Claims

Mr. Adams argues that he was discriminated against based on his race. The Fourteenth Amendment prohibits states from denying individuals equal protection of the law. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). To establish his equal protection claim, Mr. Adams must show that he (1) is a member of a protected class, (2) he is otherwise similarly situated to members of an unprotected class, and (3) he was treated differently from members of the unprotected class. *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005). To determine whether

8

individuals are similarly situated, "courts ask whether the other [individuals'] situations were similar enough to the plaintiff's that it is reasonable to infer, in the absence of some other explanation, that the different treatment was a result of race or some other unlawful basis." *Howell v. Wexford Health Sources, Inc.*, -- F.3d --, 2021 WL 405006, *6 (7th Cir. Feb. 5, 2021) (internal quotation omitted). "This inquiry is flexible, common-sense, and factual. It asks, essentially, are there enough common features between the individuals to allow a meaningful comparison?" *Id.* "While … comparability … is a context-dependent question often suitable for a jury, when the facts of a case suggest that no reasonable jury could see enough commonality for a meaningful comparison between the [inmates], summary judgment is appropriate." *Id.*

### 1. Mr. Feldkamp

Mr. Adams contends that Mr. Feldkamp investigated and pursued disciplinary charges against him because Mr. Adams is African American. Mr. Feldkamp argues that his investigation and findings were not motivated by Mr. Adams's race, but were the result of a thorough and objective investigation. Mr. Adams argues that Mr. Feldkamp's conclusions were false – including the time of the assault, the housing unit of the offenders involved, and whether Mr. Adams had been extorting the injured offender. Dkt. 189, ¶ 26-36. Mr. Adams also argues that the fight at issue was between two white offenders, neither of which were sent to segregation, that the offender who was injured was not charged with fighting, and that the offender who committed the assault received lower sanctions than he did. Dkt. 217, p. 22.

Mr. Adams has not designated evidence of similarly situated individuals that would allow a reasonable jury to infer that Mr. Feldkamp discriminated against him because of his race. Mr. Adams argues that Kenneth Garretson, the white offender who was found to have committed the assault, did not receive sanctions as severe as those he received. But Mr. Adams has not designated

9

evidence showing that Mr. Feldkamp imposed or caused to be imposed the sanction upon either inmate. Mr. Feldkamp wrote a report of investigation of incident charging Mr. Adams with Conspiracy to Assault. Dkt. 207-1 p. 18. According to his report of investigation, Mr. Feldkamp intended to charge Mr. Adams and Mr. Garretson with the 100A offense of Criminal Gang Activity. Dkt. 202-3 p. 14. Mr. Feldkamp did in fact charge Mr. Adams with 100A Criminal Gang Activity, *Adams* I, dkt. 10-1,[4] but there is no evidence regarding the charge against Mr. Garretson. Mr. Feldkamp's report of investigation also contained a request that "aggravated circumstance be cited in the event of a guilty verdict . . . as well as restitution for the medical costs from the offender's serious injury." Dkt. 207-1 p. 18. There is no evidence regarding whether Mr. Feldkamp made a similar recommendation as to Mr. Garretson.

DHO Peltier performed Mr. Adams's disciplinary hearing. *See Adams I*, dkt. 10-1. DHO Andrews performed the rehearing. Dkt. 209-1 p. 26. Mr. Adams has designated no evidence regarding who performed Mr. Garretson's disciplinary hearing and imposed disciplinary sanctions against him. There is therefore no evidence that Mr. Feldkamp either himself treated Mr. Adams different, or caused him to be treated different, than Mr. Garretson. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (a defendant can only be liable for the actions or omissions in which he personally participated).

Mr. Adams next argues that Mr. Feldkamp charged him with conspiracy to commit assault but did not charge the injured offender with any disciplinary infraction. Mr. Adams and the injured offender, however, were not similarly situated because the injured offender was found to be the

---

[4] For the Rehearing, Mr. Adams was charged with Conspiracy/Aiding Assault and Battery with Serious Bodily Injury. *Adams I*, dkt. 10-3.

10

victim of the assault. This is a sufficient difference between Mr. Adams and the injured offender that no reasonable jury would infer that they were similarly situated.

Mr. Adams next argues that several of Mr. Feldkamp's statements and actions are evidence of discriminatory intent, including: his statement to Mr. Barnett that Officer Nelson "favors Black gentlemen", dkt. 202-3, p. 3 ¶ 17; his email to Mr. Andrews stating, "Bro I thought you were 'big time.' Pimp to pimp, playa to playa you ain't show out on this one. Yo game is lame."; dkt. 189, ¶ 63; and his comment and facial expression in reaction to seeing Mr. Adams's tattoo of the continent of Africa. Dkt. 189 at 5 ¶ 39.

While direct evidence may be used to establish discrimination in an Equal Protection claim, *Williams v. Seniff*, 342 F.3d 774, 788 (7th Cir. 2003), stray inappropriate comments are not sufficient to do so, *see Davis v. Time Warner Cable of Southeastern Wisconsin, L.P.,* 651 F.3d 664, 667 (7th Cir. 2011) (supervisor displayed a "motivational" sign bearing the tagline "Clebonics" and commented that an African–American's telephone demeanor was "too urban"); *Ellis v. United Parcel Service, Inc.,* 523 F.3d 823, 829 (7th Cir. 2008) ("Ellis points to comments Baker made that 'there are plenty of good sisters out there' and that Ellis was a 'sell-out' and Craft's purported remark that by 'dating a white girl from the phone center' Ellis was 'messing up his career.'").[5] The actions and comments that Mr. Adams attributes to Mr. Feldkamp do not support an inference of discriminatory intent.

Mr. Feldkamp is therefore entitled to summary judgment on Mr. Adams' race-discrimination claim.

---

[5] While the Court relies on employment discrimination cases, the Seventh Circuit has made "clear that the same standards for proving intentional discrimination apply to Title VII and § 1983 equal protection claims." *Williams*, 342 F.3d at 778 n.13 (citing cases).

### 2. The Other Defendants

Mr. Adams testified that his claims against Mr. Andrews, Mr. Penfold, and Mr. Peltier are based on their deference to Mr. Feldkamp's investigatory findings. Dkt. 217, p. 61:17-19, 66:3-5, 67:11-18; 75:21-78:1 (Penfold); 83:17-86:6 (Peltier). There is no designated evidence to support a discrimination claim against Mr. Feldkamp or showing that any of these defendants treated any other offender differently than Mr. Adams because of his race. Mr. Peltier conducted Mr. Adams's disciplinary hearing, dkt. 189 ¶ 45, Mr. Penfold denied Mr. Adams's appeal of his disciplinary hearing, dkt. 189 ¶ 51, and Mr. Andrews conducted the rehearing, dkt. 189 ¶ 58. As explained above, there is no designated evidence regarding who conducted Mr. Garretson's disciplinary proceedings or how the proceedings were resolved. Finally, because Mr. Adams's discrimination claims fail, his claim that Robert Carter's failure to train resulted in the discrimination also fails. *See Windle v. City of Marion*, 321 F.3d 658, 663 (7th Cir. 2003) ("[A] plaintiff must prove that the individual officers are liable on the underlying substantive claim in order to recover damages from a municipality under either a failure to train or failure to implement theory.").

These defendants are therefore entitled to summary judgment on Mr. Adams's discrimination claims.

### B. Retaliation

The defendants also move for summary judgment on Mr. Adams's retaliation claim. To prevail on a First Amendment retaliation claim, Mr. Adams must show that "(1) []he engaged in activity protected by the First Amendment; (2) []he suffered a deprivation that would likely deter First Amendment activity; and (3) the protected activity []he engaged in was at least a motivating factor for the retaliatory action." *Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir. 2017) (internal citations omitted).

### 1. Protected Activity

Here, the defendants do not dispute that Mr. Adams has satisfied the first element of his retaliation claim. His ombudsman complaint was protected by the First Amendment. *See Perez v. Fenoglio*, 792 F.3d 768, 783 (7rh Cir. 2015) ("filing a non-frivolous grievance is a constitutionally protected activity sufficient to support a retaliation claim").

### 2. Deprivation Likely to Deter First Amendment Activity

The defendants also do not contest that Mr. Adams suffered a deprivation that would likely deter First Amendment activity. Mr. Adams spent significant time in segregation, which is a deprivation that is likely to deter First Amendment activity. *See Babcock v. White*, 102 F.3d 267, 274 (7th Cir. 1996) (classifying an inmate to segregation for one year for filing grievances states a retaliation claim).

### 3. Motivating Factor

The defendants argue that Mr. Adams's protected activity was not a motivating factor in any action taken against him.

To prove his First Amendment retaliation claim, Mr. Adams must show that his protected activity was the cause of the retaliatory action. He can do so by showing that the "protected activity was 'at least a motivating factor' for the retaliatory action." *Thomas v. Anderson*, 912 F.3d 971, 976 (7th Cir. 2018) (quoting *Perez*, 732 F.3d at 783).

Mr. Adams contends that he was retaliated against for filing an ombudsman complaint regarding his removal from his kitchen job. Mr. Adams filed the ombudsman complaint on January 18, 2017. Dkt. 189 ¶ 11. Mr. Feldkamp filed the first conduct report on the Conspiracy Charge on February 5, 2017. Dkt. 207-1 p. 6. "Suspicious timing will rarely be sufficient in and of itself to create a triable issue." *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (internal

13

quotations and citations omitted). A plaintiff may support a reasonable inference of retaliatory animus with the overall "chronology of events." *E.g.*, *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009) ("Mays presented a chronology of events from which retaliation could be inferred; almost immediately after making his protected complaint about strip searches, the guards subjected him to a much more onerous search."). But "[f]or an inference of causation to be drawn solely on the basis of a suspicious-timing argument, we typically allow no more than a few days to elapse between the protected activity and the adverse action." *Kidwell*, 679 F.3d at 966. More than two weeks passed between Mr. Adams's ombudsman complaint and the disciplinary charges against him. This is too long of a gap to allow an inference of retaliatory motive based on timing alone. Mr. Feldkamp is therefore entitled to summary judgment on Mr. Adams's retaliation claim.

### 2. Other Defendants

As with his discrimination claim, Mr. Adams testified that his claims against Mr. Andrews, Mr. Penfold, and Mr. Peltier are based on their reliance on Mr. Feldkamp's report of investigation. Dkt. 217, p. 61:17-19, 66:3-5, 67:11-18; 75:21-78:1 (Penfold); 83:17-86:6 (Peltier). Mr. Adams points to no evidence that any of these defendants were even aware of his ombudsman complaint. *See Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018) ("vague and confusing testimony" that the plaintiff named the defendant at some point in a grievance with no evidence that the defendant even knew about it was not enough to support a retaliation claim). Further, these defendants' actions—Mr. Peltier's disciplinary hearing decision, Mr. Penfold's denial of the appeal, and Mr. Andrews's rehearing decision—were even more separated in time from the ombudsman complaint than Mr. Feldkamp's conduct report. Mr. Adams therefore has not made a prima facie case of discrimination against these defendants. Finally, like the discrimination claim, because Mr. Adams's retaliation claim fails, his failure to train claim against Mr. Carter must also be dismissed.

14

Accordingly, there is no evidence to support an inference of separate retaliatory animus by these defendants and they are entitled to summary judgment on Mr. Adams's retaliation claims.

### C. Due Process

When Mr. Adams challenged his disciplinary conviction on the Conspiracy Charge, another judge of this Court found that his due process rights had been violated. *See Adams I*. But the applicable due process analysis in that case was based on Mr. Adams's deprivation of good time credits. *See id*. Because the Conspiracy Charge was expunged, those good time credits have been restored and the only injury Mr. Adams challenges here is the time he spent in segregation.

The Court performs a two-step analysis when considering a procedural due process claim in this context. *Isby v. Brown*, 865 F.3d 508, 524 (7th Cir. 2017). First, the Court must determine whether the plaintiff was deprived of a protected liberty interest. *Id*. Then the Court considers "what process was due under the circumstances." *Id*. In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court explained due process protections "will be generally limited to freedom from restraint which, . . . imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." *Id*. "In the absence of such 'atypical and significant' deprivations, the procedural protections of the Due Process Clause will not be triggered." *Lekas v. Briley*, 405 F.3d 602, 608 (7th Cir. 2005).

Even if due process protections are triggered when an inmate is placed in disciplinary segregation, "the requirements of informal due process leave substantial discretion and flexibility in the hands of prison administrators." *Westefer v. Neal*, 682 F.3d 679, 685 (7th Cir. 2012). Informal due process requires only that the inmate be given an "opportunity to present his views"— not necessarily a full-blown hearing. *Id*. If the prison holds a hearing, inmates do not have a constitutional right to call witnesses or to require prison officials to interview witnesses. *Id*.

Here, Mr. Adams spent a significant time in segregation and has testified as to the harsh conditions he experienced there. A reasonable jury might conclude that he was deprived of a protected liberty interest. But Mr. Adams was provided a hearing before his placement in segregation on the Conspiracy Charge and the opportunity to present his views. While this hearing did not satisfy the requirements of due process when revoking good time credits and therefore impacting the length of his sentence, there is no evidence to support a conclusion that the hearing on the Conspiracy Charge was insufficient to satisfy the requirements of informal due process for placement in segregation. The defendants are therefore entitled to summary judgment on this claim.

### D. Eighth Amendment Claims

The parties also seek summary judgment on Mr. Adams's Eighth Amendment claims. The defendants argue that they cannot be held liable because they had no control over the conditions of Mr. Adams's confinement in disciplinary segregation. "Individual liability under § 1983… requires personal involvement in the alleged constitutional deprivation." *Colbert*, 851 F.3d at 657 (internal quotation omitted) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.... A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.")). Mr. Adams has admitted that Mr. Andrews (Adams Dep. at 70:21-71:1), Mr. Penfold (*id.* at 78:20-79:1), Mr. Carter (*id.* at 83:12-16), and Mr. Peltier (*Id.* at 96:22-97:2) had no control over the conditions he experienced in disciplinary segregation. And he testified that he has no evidence that Mr. Feldkamp did. (*Id.* at 52:24-53:23).

Because the defendants played no role in the conditions Mr. Adams experienced when he was in segregation, they are entitled to summary judgment on his Eighth Amendment claims.

## IV. Conclusion

For the foregoing reasons, Mr. Adams's motion for summary judgment, dkt. [188], is **denied**. The defendants' motion for summary judgment, dkt. [199], is **granted**. Mr. Adams's motion for leave to add corrections, dkt. [212], is **granted** to the extent that his supplemental declaration has been considered. Judgment consistent with this Order shall now issue.

**SO ORDERED.**

Date: 3/19/2021

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

BENJAMIN ADAMS
2501 Brookside Avenue
Apartment Rear
Indianapolis, IN 46218

Michael J. Blinn
INDIANA ATTORNEY GENERAL
michael.blinn@atg.in.gov